FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KARLA H. ABATIE,
             *Plaintiff-Appellant,*

                   v.

ALTA HEALTH & LIFE INSURANCE
COMPANY, a Delaware corporation,
f/k/a Anthem Home Life Insurance
Company, f/k/a Home Life
Financial Assurance Company,
             *Defendant-Appellee.*

No. 03-55601

D.C. No.
CV-01-06699-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 11, 2005—Pasadena, California

Filed August 31, 2005

Before: Harry Pregerson, Robert R. Beezer, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Beezer;
Dissent by Judge Pregerson

11819

---

**COUNSEL**

Craig Price, Griffith & Thornburgh, LLP, Santa Barbara, California, for the appellant.

R. Daniel Lindahl, Bullivant Houser Bailey, P.C., Portland, Oregon, for the appellee.

---

**OPINION**

BEEZER, Circuit Judge:

Appellee Alta Health & Life Insurance Company ("Alta"), administrator of an ERISA-regulated employee welfare benefit plan, denied appellant Karla H. Abatie's claim for life insurance benefits for the death of her husband, Dr. Joseph Abatie ("Dr. Abatie"). After conducting a bench trial, the district court held that Alta did not abuse its discretion. Abatie appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

I

Dr. Abatie was employed by the Santa Barbara Medical Foundation Clinic ("Clinic") until November 1992, when he took a medical leave of absence and applied for disability benefits. In early 1993, when Dr. Abatie was suffering from

both lymphoma and anemia, the Clinic classified him as a retiree. Dr. Abatie's health improved following a successful splenectomy in 1998, but he died in June 2000 from a combination of conditions. We turn to discuss the terms of the insurance policy and sketch the events leading to this dispute.

A

The life insurance policy at issue was part of an employee welfare benefit plan provided by the Clinic. The Clinic's plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. The group life insurance plan was originally issued by Home Life Financial Assurance Company ("HLFAC"). Alta is a successor in interest to HLFAC's rights and responsibilities under the plan. The policy provides that, in order for insurance coverage to start, "you must be at active full-time work for your Employer." Coverage ends, according to the policy, when "employment ends . . . unless the Policy provides otherwise."

The policy further provides that in the event an insured becomes totally disabled while he is covered, life insurance coverage may be continued even without a premium charge, upon approval of what is commonly referred to as a "waiver of premium application."[1] As defined in the policy, a total disability occurs when the insured is "not able to work at all at any job or business for pay or profit due to injury or sickness." One of the conditions of such continued life insurance coverage in the event of total disability requires that the insurer "receive proof of [the insured's] total disability within 12 months after the date [the insured] become[s] totally disabled."[2] "This proof must be sent to [Alta's] Home Office."

---

[1]Under the policy, a former employee may also retain coverage in retiree status so long as the required premiums are paid. There is no evidence that such premiums were paid, nor does Appellant argue that Dr. Abatie was covered by this mechanism.

[2]The policy allows, "Even if we do not receive [ ] proof within the time required, we will not deny the claim if we receive the proof as soon as it is reasonably possible."

Even if a waiver of premium application is granted, this coverage ends when the insured is "no longer totally disabled" or fails to provide "proof of continued disability."

B

Several months after Dr. Abatie's death, the Clinic wrote to Alta requesting the payment of life insurance benefits. The Clinic admitted that "[w]hen Dr. Abatie's disability began in late 1992, the benefits coordinator failed to initiate the paperwork for waiver of premium to which he was entitled." Even so, the Clinic sought "retroactive" qualification of Dr. Abatie for insurance coverage. A letter from the Clinic's insurance broker to Alta also noted that "due to administrative error, the waiver of premium application was not filed."

Alta denied the claim for life insurance benefits because, according to its records, a waiver of premium application was not filed within twelve months of the date Dr. Abatie became totally disabled. Alta also relied on the Clinic's insurance broker's written admission that a waiver of premium was never filed as "further confirm[ation]" that the mandatory application was never filed. As a result, Alta wrote, coverage was no longer in force when Dr. Abatie died. The notice of denial, sent in March 2001, permitted Abatie to appeal Alta's determination within 60 days. Rather than proceed with the administrative review process, however, Abatie decided to file a lawsuit against Alta in June 2001.

After Abatie filed this lawsuit, the parties conducted additional discovery, supplementing the administrative record. The parties then agreed to permit Alta to conduct an additional review and render a final determination of the claim.[3]

_____

[3]Abatie's decision to file this action before exhausting her administrative remedies may have run afoul of ERISA's exhaustion requirements. *See Amato v. Bernard,* 618 F.2d 559, 566-68 (9th Cir. 1980). Because Alta does not argue that Abatie breached this requirement, presumably because Alta believes that Abatie cured this violation by stipulating to further administrative review, we do not reach the issue.

After reviewing the supplemented administrative record, Alta issued its final determination on the life insurance claim. Alta again denied coverage, repeating its observation that Dr. Abatie failed to submit a waiver of premium application, as evidenced by the clinic's admission that a waiver application was never filed, the lack of records in Alta's files and computer systems, and the paucity of documentation in the Clinic's files. Alta noted that it was prejudiced by Dr. Abatie's failure to file a claim because of the importance of setting aside reserves, managing the claim, and periodically verifying the continuance of the alleged disability. In addition, Alta concluded that there was insufficient proof that Dr. Abatie was totally disabled from all occupations until his death; it cited this conclusion as a second, additional reason for denying the claim.

After a bench trial, the district court held that abuse of discretion review applied and that Alta did not abuse its discretion in denying Abatie's claim.

## II

When a plan administrator's denial of benefits is challenged under ERISA, the default rule holds that courts review the administrator's denial *de novo,* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). Abatie vigorously argues that we must review Alta's denial of benefits *de novo* because the Plan does not adequately grant discretion to Alta. Abatie also argues that even if the Plan does effectively grant Alta discretion, Alta's behavior manifested a serious conflict of interest which demands heightened review. We address, and reject, each contention.

## A

**[1]** Only if a plan unambiguously grants discretion to the administrator to determine eligibility will we review an

administrator's denial of benefits for an abuse of discretion. *Id.; Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1088-89 (9th Cir. 1999) (en banc).

**[2]** The standard of review depends on whether the "plan documents unambiguously say in sum or substance that the Plan Administrator or fiduciary has authority, power, or discretion to determine eligibility or to construe the terms of the Plan[.]" *Sandy v. Reliance Standard Life Ins. Co.,* 222 F.3d 1202, 1207 (9th Cir. 2000). Although the plan must effectively grant the administrator discretion in interpreting the plan or determining eligibility, there is no requirement that the word "discretion" be used. *Id.* (observing that "there is no magic to the words 'discretion' or 'authority' ").

Alta's plan provides:

> The responsibility for full and final determinations of eligibility for benefits; interpretation of terms; determinations of claims; and appeals of claims denied in whole or in part under the HLFAC Group Policy rests exclusively with HLFAC.

It is readily evident that the Alta plan grants such authority to Alta—a successor in interests and responsibilities to HLFAC—in conveying to Alta the "exclusive[ ]" "responsibility for full and final" determinations as to eligibility and plan interpretations. *See Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.,* 293 F.3d 1139, 1142 (9th Cir. 2002) (applying the abuse of discretion standard where the policy grants the administrator "the 'power' and 'duty' to 'interpret the plan and to resolve ambiguities, inconsistencies and omissions' and to 'decide on questions concerning the plan and the eligibility of any Employee . . . .' ") (citing *Sandy,* 222 F.3d at 1207); *Bendixen v. Standard Ins. Co.,* 185 F.3d 939, 943, 943 n.1 (9th Cir. 1999) (holding that a plan that gave " 'full and exclusive authority' " to the administrator " 'to determine . . . eligibility for insurance [and a policyhold-

er's] entitlement to benefits' " "clearly confer[red]" discretion to the plan administrator).

A side-by-side comparison reveals that the Alta plan more clearly conveys discretion than those plans which we have held to fall short of granting discretionary authority. *See Kearney,* 175 F.3d at 1089-90 (holding that language providing that the insurer will pay disability benefits "upon receipt of satisfactory written proof that you have become disabled" does not unambiguously confer discretion upon the administrator). In *Ingram v. Martin Marietta Long Term Disability Income Plan,* 244 F.3d 1109, 1112-13 (9th Cir. 2001), the plan provided that "[t]he carrier solely is responsible for providing the benefits under this Plan"; (2) "[t]he carrier will make all decisions on claims"; and (3) "[a]ccordingly, . . . the review and payment or denial of claims and the provision of full and fair review of claim denial pursuant to [ERISA] shall be vested in the carrier." We concluded that such language was insufficient to convey discretion and therefore failed to give rise to abuse of discretion review. *Id.* at 1113-14. We held that the statements simply identified the carrier as the entity that paid benefits and administered the plan. *Id.* at 1112-13. The bare allocation of decision-making authority was insufficient to give rise to "a grant of discretionary authority in making those decisions." *Id.* By contrast, the Alta plan explicitly grants to Alta, and "exclusively" to Alta, "[t]he responsibility for full and final determinations" of claims, plan interpretation, plan eligibility, and appeals.

**[3]** We hold that Alta's plan explicitly grants discretion to Alta to interpret the plan and determine eligibility, so that, barring other justifications for removing deference, we must review Alta's denial of benefits for an abuse of discretion.

## B

**[4]** Alta's dual role as administrator and funding source gives rise to an apparent conflict of interest, but that "does not

automatically remove the deference" normally accorded to ERISA administrators. *Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 797 (9th Cir. 1997); *see also Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869, 876 (9th Cir. 2003) ("[W]hile the plan has a financial interest in keeping [the money], that alone cannot establish [a] conflict of interest in the administrator, because it would leave no cases in the class receiving deferential review . . . ."); *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir. 1998) (observing that where a plan administrator is also the payor, "[t]he conflict is not as serious as might appear at first blush," because of incentives upon the insurer to refrain from being overly eager to deny claims).

Where a plan grants discretion to the plan administrator, abuse of discretion is our prevailing standard of review because the parties themselves have contracted for it. *Jordan,* 370 F.3d at 875 ("When we review for abuse of discretion, it is because the plan has put the locus for decision in the plan administrator, not in the courts, so we cannot substitute our judgment for the administrator's."). To minimize costs of employee benefit plans, ERISA allows for administrative resolution of claims, which we review in a deferential manner. *See Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir. 1980) (noting that the key goals of ERISA, in allowing for administrative resolution of claims, were to "help reduce the number of frivolous lawsuits," "provide a nonadversarial method of claims settlement," and "minimize the costs of claims settlement for all concerned.").

**[5]** It is only when a serious conflict of interest exists that our standard of review changes. *Jordan,* 370 F.3d at 875. To prove that a serious conflict of interest exists, and to override a plan's unambiguous conferral of discretion to the plan administrator, the plaintiff must "provide[ ] material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a

breach of [its] fiduciary obligations to the beneficiary." *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1323 (9th Cir. 1995). If plaintiff satisfies this burden, *de novo* review is appropriate if the administrator fails to "produc[e] evidence to show that the conflict of interest did not affect the decision to deny benefits." *Id.*

The district court's choice and application of the standard of review is itself reviewed *de novo. Lang,* 125 F.3d at 797. Underlying findings of fact are reviewed for clear error. *Friedrich v. Intel Corp.,* 181 F.3d 1105, 1109 (9th Cir. 1999). The district court concluded that Abatie "failed to meet her burden of producing material, probative evidence that the apparent conflict has ripened into an actual conflict sufficient to alter the standard of review." We agree.

1

Abatie argues that an actual conflict of interest is evident because Alta offered different reasons for denying the claim at different stages of review. In its initial decision denying benefits, Alta explained that it was denying the claim because a waiver of premium had never been requested. In Alta's second decision letter, which was written after this lawsuit was filed and with a newly supplemented administrative record, Alta again relied on the failure of Dr. Abatie and the Clinic to file a waiver of premium. This final administrative determination added, as an additional reason for denial, that there was insufficient proof that Dr. Abatie remained totally disabled until his death.

We have found an actual conflict to exist where an administrator has presented *inconsistent reasons* for denial that emerged after the administrator's first ground for denial was rebutted by clear evidence. *Lang,* 125 F.3d 794 at 799. *Lang* does not govern the instant case, however, because Alta merely offered an *additional reason* for denying benefits. We have *never* held that an ERISA administrator's assertion of a

supplemental reason for denying a claim subsequent to the initial denial is sufficient evidence to demonstrate that a plan administrator has breached its fiduciary duties to the beneficiary.

The context of the administrative process in this case emphasizes the appropriateness of Alta's decision-making process. Alta's final determination was the only decision that Alta rendered based on the entire administrative record. To be sure, a plan administrator could not be expected to articulate all reasons for denial until the administrative record was complete. Further, Alta's invocation of the additional reason for denial on appeal did not procedurally prejudice Abatie. Since the initiation of her appeal, Abatie has known that even if she were successful in persuading the appellate body that the initial benefit determination that her husband was no longer covered under the Plan was incorrect, she would still need to demonstrate that her husband remained totally disabled until his death.

**[6]** There is no rule that an ERISA administrator, after failing to raise a denial reason in the initial benefit determination, is estopped from invoking that reason for denial upon appeal. The Act simply provides that at the initial stage of review the administrator must, upon denying a claim, and "[i]n accordance with regulations of the Secretary" of Labor, provide adequate, understandable notice that "set[s] forth the specific reasons for such denial." 29 U.S.C. § 1133(1). The Act requires that there be a "reasonable opportunity" to appeal a denial of a claim "for a *full and fair* review by the appropriate named fiduciary." 29 U.S.C. § 1133(2) (emphasis added). The statute's dictate that the appellate body's review be "full and fair" suggests that the appellate administrative body is not limited to a review of the reasons articulated by the administrator who initially denied the claim.

**[7]** The regulations in effect at the time Abatie filed her claim reiterate the requirement that the appellate body con-

duct a "full and fair" review of a denied claim. Those regulations require the appellate body to set forth its decision in writing, with no indication that the decision be limited to the reasons for denial as articulated by the initial decision-maker. *See* 29 C.F.R. § 2560.503-1 (1999) (regulations in effect at the time Abatie filed her claim).[4] We hold that an ERISA administrator's articulation of a new reason for denying a claim on appeal after the initial benefit determination has been rendered is permissible and so does not constitute material, probative evidence that the administrator's conflict of interest manifested itself into an actual breach of its fiduciary obligations.

2

Abatie alleges that Alta's failure to discuss certain pieces of evidence in its decisions denying Abatie's claim illustrates her contention that Alta's conflict of interest led to a breach in its fiduciary duty. For guidance in assessing Abatie's claim, we again refer to *Atwood,* which states that "material, probative evidence . . . tending to show that the fiduciary's self-interest caused a breach of [its] fiduciary obligations" must be set forth in order to dislodge our deferential standard of review. *Atwood,* 45 F.3d at 1323. Applying *Atwood,* we hold that a plan administrator's failure to discuss non-dispositive evidence does not constitute material, probative evidence that the fiduciary's self-interest has led to a breach of its fiduciary obligations.

---

[4]The current regulations, while not governing Abatie's claim, further the notion that new reasons for denial may, and perhaps even should, be invoked by the fiduciary subsequent to the initial benefit determination. These regulations require that, on appeal, the fiduciary "[p]rovide for a review that takes into account all comments, documents, records, and other information submitted by the clamant relating to the claim, *without regard to whether such information was submitted or considered in the initial benefit determination.*" 29 C.F.R. § 2560.503-1(h)(2)(iv) (2004) (emphasis added).

i

Abatie first points to deposition testimony of an employee of the Clinic, who testified that she contacted someone who worked for the insurer to request a waiver of premium for Dr. Abatie. Abatie argues that Alta's failure to mention this deposition testimony in its final decision denying benefits demonstrates a serious conflict of interest that demands heightened review. We disagree.

Alta's final determination was set forth in a detailed, eleven-page letter, which contains a significant discussion of the policy and the pertinent issues relating to insurance coverage on the life of Dr. Abatie. Therein, Alta engages in a careful and thorough four-page, single-spaced analysis as to whether Dr. Abatie had successfully obtained a waiver of premium. Alta explicitly noted that it "based [its] determination on an examination of the Administrative Record as a whole, as well as on an examination of its own business records and computer systems relating to disability waiver of premium claims." The final determination contained a detailed analysis of the typical documentary evidence that would exist in the Clinic's and the insurers' files if a waiver of premium had been granted. In its discussion, Alta considered several undated documents prepared by a Clinic employee which suggested that the employee had filed a waiver of premium application, with a handwritten note stating that "waiver was granted 2/94."[5] Alta allowed that these brief documents and handwritten note "provide some inferential evidence that a waiver claim was submitted," but emphasized that the documents "do not specifically state to whom the claim was allegedly submitted, what specific information was provided, who

---

[5]These handwritten, undated, and vague documents were allegedly discovered by the Clinic after this litigation was commenced and may well have been falsified for the purpose of either enhancing Abatie's claim or deflecting blame from the Clinic for its apparent failure to file a waiver of premium application.

evaluated and approved the claim, and the specific grounds on which the claim was approved." Alta concluded that the "lack of critically important information, combined with the absence of any documentation from [the insurer] concerning this claim . . . , substantially outweighs any inference that can be drawn that a waiver claim was submitted on behalf of Dr. Abatie."

**[8]** Although the deposition testimony was not discussed in Alta's final denial letter, the record does not support the proposition that the testimony was either "ignored" or "disregarded." Alta explicitly noted in its final denial that it "based [its] determination on an examination of the Administrative Record as a whole," revealing that Alta did consider the deposition testimony, which was part of the amended administrative record. Given our deferential stance toward decisions of ERISA administrators, where an ERISA administrator states that it considered the record "as a whole," we must assume that it did so, in the absence of clear and convincing evidence to the contrary.

**[9]** We conclude that Alta was under no obligation to discuss deposition testimony about the alleged waiver of premium application. The plan requires that proof of an insured's total disability "be sent to [the insurer's] Home Office," indicating that the application and corresponding proof must be in writing. In assessing whether the waiver of premium application and accompanying proof of disability was ever filed, we hold that a plan administrator is entitled to rely exclusively on the written documentation in the administrative record, a record to which both sides of this case had an opportunity to contribute. This proposition derives from the plan itself, a document to which both parties agreed, which requires that a written waiver of premium application be submitted. Alta was not required to delve into a he-said, she-said debate as to whether a waiver of premium application was ever filed. Because a plan administrator is entitled to rely exclusively on documentary evidence to determine whether the plan-required

paperwork was filed, Alta was under no obligation to discuss the deposition testimony. In its discretion as the plan administrator, Alta can certainly consider oral testimony if it wishes, but the plan's requirement for a written waiver of premium application along with written proof of total disability allows it to solely consider documentary evidence to ascertain whether the documents were filed. With no obligation on Alta to consider the evidence in the first instance, it follows that the failure to discuss the deposition cannot constitute "material, probative evidence" that Alta breached its fiduciary obligations.

Moreover, the unreliable and inconclusive nature of the deposition testimony at issue is evident. It was only in response to leading questions from Abatie's attorney that Melissa Peter, a former employee of the Clinic, testified in the deposition that she had contact with an individual at the insurer to "process" Dr. Abatie's waiver of premium. Peter does not remember the name of the individual with whom she allegedly spoke. She alleges that the insurer granted the waiver of premium, but does not remember from whom she learned the information, nor does she recollect whether such notification was oral or written. Peter testified that in a case such as Dr. Abatie's, a disabled employee would typically be sent a form to complete and return to the Clinic's Human Resources office. The Clinic, in turn, would submit the waiver of premium application to the insurer. The record does not demonstrate that Dr. Abatie completed the application form. In her deposition, Peter did not testify that she either received the completed form from Dr. Abatie or submitted it to the insurer. Peter's testimony spoke to possibilities, not to actualities: "I believe Dr. Abatie would have completed the form, I would have received it, it would have been submitted." More generally, Peter testified that when she dealt with an insurance company and received oral confirmation, there would be follow-up in writing to obtain written confirmation from the insurer. The record contains no evidence of any such official written confirmation that the insurer had granted Dr. Abatie

a waiver of premium. This ambiguous deposition testimony comes against the backdrop of a written admission both by the Clinic and its insurance broker that the waiver of premium application was never filed. *See* Part I.B., *supra.*

A further problem with the Peter deposition is the high probability that the Peter testimony was self-serving. Peter may well have been motivated by sympathy for Abatie and a desire to cover up the Clinic's, and possibly her own, failure to properly file Dr. Abatie's waiver of premium application.

**[10]** In sum, the deposition hardly clears the air on the subject, and so it is not a piece of evidence that an administrator *must* discuss. The category of evidence that an administrator must discuss is extremely limited in light of our deferential review of decisions of ERISA administrators who are granted discretion to adjudicate claims by their plan. Because of the discretion granted to the administrator by the ERISA plan, we are unable to interject ourselves as a micromanager in the plan's affairs. We hold that a "full and fair review," 29 U.S.C. § 1133(2), does not demand that an ERISA administrator recite every piece of evidence somehow relevant to its decision or write a treatise as to every claim that comes before it.

**[11]** We further hold that a mere failure of an administrator to discuss evidence does not violate ERISA principles where the evidence is non-dispositive in the first instance. We have recognized that when an "administrator *'arbitrarily* refuse[s] to credit a claimant's *reliable* evidence,' " heightened review may be called for, *Jordan,* 370 F.3d at 879 (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003) (emphasis added)), but only if the administrator's decision as a whole is without "a reasonable basis." *Id.* at 879 ("But as long as the record demonstrates that there is a reasonable basis [for the administrator's decision], the decision cannot be characterized as arbitrary, and we must defer to the decision of the plan administrator."). A necessary predicate to launch such an inquiry is to ask whether the piece of evidence at

issue is highly reliable, and even if it were, the decision's fail-
ure to mention that evidence must be arbitrary, all of which
led to a decision that was without a reasonable basis. Further,
because we are dealing with an alleged procedural violation
of ERISA's requirement for "full and fair review," heightened
review would be called for only if the violation was "so fla-
grant as to alter the substantive relationship between the
employer and the employee, thereby causing the beneficiary
substantive harm." *Gatti v. Reliance Standard Life Ins. Co.,*
415 F.3d 978, 985 (9th Cir. 2005).

We need not linger over the application of these principles
to the case at hand. There was good reason for the administra-
tor not to discuss the deposition testimony, because the Peter
deposition would not have affected the outcome, and it was
both ambiguous and unreliable. The deposition testimony is
non-dispositive for these three independent reasons, removing
it from any possible class of evidence that an administrator
*must* discuss.

ii

Abatie argues that Alta's failure to discuss the clerical error
provision in the policy also qualifies as material and probative
evidence of an actual conflict of interest. We disagree. The
policy's clerical error provision reads:

> A clerical error on the part of the Policyholder or us
> will not:
>
> 1) deprive a person of the insurance he or she is
> entitled to under this Policy; or
>
> 2) cause insurance to continue beyond the date on
> which it would reduce or end.
>
> If such an error is discovered, a fair adjustment of
> premiums will be made.

**[12]** We have previously concluded that similar policy language could not excuse the failure to submit a timely proof of a claim, because doing so would render "proof-of-claim provisions [ ] meaningless." *Cisneros v. UNUM Life Ins. Co. of America,* 134 F.3d 939, 943 n.2 (9th Cir. 1998). Because Dr. Abatie's failure to submit a timely claim could not be excused by a "clerical error" provision, Alta's failure to discuss it is not evidence of an actual conflict of interest. It would be costly and unworkable to require a plan administrator to discuss terms of a plan that are totally irrelevant to the administrator's final decision. Because the clerical error provision was non-dispositive, it was perfectly permissible for Alta's decision to omit discussion of the plan's clerical error provision.

3

We reject Abatie's contention that Alta manifested a serious conflict of interest by intentionally misrepresenting Dr. Abatie's medical records. As we explain, the misrepresentations that Abatie alleges are actually not misrepresentations at all.

We must be careful in evaluating claims that an administrator intentionally misrepresented the record in the first instance. Although we can conceive of circumstances where an administrator intentionally misrepresents the record such that it is clear that it was bent on wrongly denying a claim, where a plan grants discretion to the plan administrator we must be loath to second-guess the conclusions of the plan administrator. Because Alta's discussion and interpretation of the administrative record is reasonable, we do not even begin to approach the point at which heightened review would be appropriate.

Alta, in explaining that the record provides insufficient proof that Dr. Abatie was totally disabled, noted that "on August 11, 1998, Dr. Abatie's treating physician concluded

that his medical condition was 'better than it has been at any time over the last 9 years.' " This notation follows a discussion of Dr. Abatie's lymphoma and related hematological complications, so it is clear in context that Alta's reference to Dr. Abatie's "medical condition" is a reference to his anemia and related problems. In this context, Alta's characterization of the treating physician's report is accurate because Dr. Abatie was anemic, and the better hemoglobin level indicated that his anemia was improving.

Alta also fairly noted Dr. Abatie's "absence of regular [doctor's] office visits" during the 18-month period following his treating physician's positive report. The record reveals that Alta did visit the doctor five times during that period, but that these visits were for medical issues that had arisen (i.e., ear wax buildup, sudden sweats and shortness of breath) and were not for scheduled visits related to either his lymphoma or anemia, the two related conditions that led to Dr. Abatie's disability in the first instance. Alta's characterization of Dr. Abatie's lack of scheduled office visits is a reasonable interpretation of the administrative record.

4

**[13]** We conclude that Abatie has failed to present material and probative evidence sufficient to show that a serious conflict of interest exists. Consequently, heightened review of Alta's denial of benefits is improper.

III

Because the ERISA plan effectively grants discretion to the plan administrator and there is no serious conflict of interest demanding a heightened standard of review, we review Alta's denial of benefits for an abuse of discretion. An administrator abuses its discretion if it renders "a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of

fact." *Atwood,* 45 F.3d at 1323-24. Alta's decision to deny benefits "should be upheld if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Estate of Shockley v. Alyeska Pipeline Serv. Co.,* 130 F.3d 403, 405 (9th Cir. 1997) (internal quotations omitted).

The plan administrator's decision comes to us on appeal for review of the decision of the district court. We will set aside a district court's findings of fact only in the event of clear error. Fed. R. Civ. P. 52(a). "Clear error review also applies to the results of 'essentially factual' inquiries applying the law to the facts." *Saltarelli v. Bob Baker Group Med. Trust,* 35 F.3d 382, 384 (9th Cir. 1994). The district court's conclusions of law are reviewed *de novo. Id.* at 385.

The district court concluded that there was insufficient evidence to support Abatie's claim that a waiver of premium was ever requested or approved. In support, the district court found that "neither Alta's nor the Clinic's records had any of the customary and usual documentation that would establish that a waiver of premium application was requested and approved."

The district court also held that Alta did not abuse its discretion in denying benefits on the additional, independent ground that there was insufficient evidence to establish that Dr. Abatie was totally and continuously disabled from 1992 until his death. Whether Dr. Abatie remained totally and continuously disabled "is a medical and administrative judgment committed to the discretion of the plan administrator based on a fair review of the evidence." *Jordan,* 370 F.3d at 880. The improvement of the anemia provides support for the ERISA administrator's conclusion that there was insufficient evidence that Dr. Abatie remained totally and continuously disabled. In addition, Dr. Abatie's treating physician also noted in the August 1998 report that Dr. Abatie's "appetite is good and weight is stable" and that Dr. Abatie denied having "any fever, infection, bleeding, adenopathy, shortness of breath,

abdominal pain, bone pain, change in bowel habits, or difficulty with urination."

**[14]** We conclude that Alta did not abuse its discretion in denying Abatie's claim for life insurance benefits.

AFFIRMED.

---

PREGERSON, Circuit Judge, dissenting:

I dissent. Unlike my colleagues, I do not think that Alta's decision to deny life insurance benefits to Mrs. Karla Abatie, Dr. Joseph Abatie's widow, should have been reviewed by the district court for an abuse of discretion. Rather, the district court should have conducted a *de novo* review of Alta's decision.

Where a plan administrator flagrantly violates ERISA's procedural protections causing the beneficiary to suffer substantive harm, a district court should conduct a *de novo* review of the plan administrator's benefits decision. *See Gatti v. Reliance Standard Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005) ("[P]rocedural violations of ERISA do not alter the standard of review unless those violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."). I think this is such a case for two reasons. When Alta rendered its final decision denying coverage to Mrs. Abatie in June 2002, it ignored deposition testimony in the administrative record that strongly favored Mrs. Abatie's claim. Furthermore, Alta waited until its final decision denying coverage to give an additional reason for denying Mrs. Abatie's claim, thereby precluding her from seeking a full and fair review of its decision to deny benefits. For both of these reasons, Alta failed to comply with ERISA's notice and full and fair review requirements in assessing Mrs. Abatie's claim for benefits.

*See* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1 (1999). Because I believe that these violations were flagrant and caused Mrs. Abatie substantive harm, I would remand this case to the district court for *de novo* review of Mrs. Abatie's claim for life insurance benefits.

## I.   *The Denial of Mrs. Abatie's Claim*

Dr. Joseph Abatie, M.D., was a participant in an employee benefit plan covered by ERISA. In 1989, Dr. Abatie was diagnosed with hemolytic anemia. Because of his worsening condition, Dr. Abatie took a leave of absence from his position as a radiologist with the Santa Barbara Foundation Clinic ("Clinic") in November 1992. Additional testing in February 1993 determined that Dr. Abatie had non-Hodgkin's lymphoma, a type of cancer affecting the lymphatic system. Dr. Abatie's condition continued to deteriorate. In mid-1993, it was determined that Dr. Abatie would be unable to return to the Clinic to work. As a result, Dr. Abatie was classified as a retiree.

Nearly five years later, Dr. Abatie's spleen was removed. Several months after the surgery, on August 11, 1998, Dr. Abatie's treating physician, Dr. Mark S. Abate, M.D.,[1] indicated that the splenectomy was successful and that "[t]he patient's current hemoglobin level is better than it has been at any time over the past 9 years. At present no further treatment is indicated." Nevertheless, in June 2000 Dr. Abatie died from a combination of conditions caused by his illness.

Mrs. Abatie submitted a claim for life insurance benefits to Alta, the successor in interest to the group insurance policy issued to the Clinic. Home Life Financial Assurance Co. ("Home Life") was the original issuer of the group policy involved in this claim. Home Life assigned its rights and

---

[1]Despite the similarity in their names, Dr. Joseph Abatie and Dr. Mark Abate were not related.

responsibilities under the group policy to Anthem Health & Life Ins. Co. In July 1998, Alta became the successor in interest to Anthem Health & Life Ins. Co.'s rights and responsibilities.

In a letter dated March 15, 2001, Alta issued its initial denial of Mrs. Abatie's claim for life insurance benefits. Alta stated that its records did not indicate that a waiver of premium claim was filed within twelve months of the date that Dr. Abatie became totally disabled, as required under the policy.[2] As a result, Alta concluded that coverage was not in force when Dr. Abatie died. Alta did, however, notify Mrs. Abatie of her ability to appeal its decision.

## II.   *The Administrative Appeal and Present Lawsuit*

Seeking to overturn Alta's determination, Mrs. Abatie filed this lawsuit in district court to enforce her rights as a beneficiary under the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Mrs. Abatie also filed an administrative appeal of Alta's denial of coverage. In connection with her lawsuit, Mrs. Abatie conducted additional discovery and supplemented the administrative record with the deposition testimony of Melissa Peter, a former Clinic employee, and with several documents from the Clinic's records.

Ms. Peter testified in her deposition that she requested a waiver of premium from Alta's predecessor, Home Life, and that Home Life granted the waiver. Ms. Peter testified in pertinent part as follows:

---

[2]The policy provided that if an insured becomes totally disabled, life insurance coverage continues under the policy without premium charge if the insured meets several conditions: (1) the total disability must start before the insured reaches age 60; (2) the total disability must begin before coverage ends; and (3) the insurer must receive proof of total disability within twelve months of the date the insured becomes totally disabled. The last provision regarding notice of disability is the "waiver of premium claim" referred to by Alta.

Q.  Is one of the things that you did for Dr. Abatie to process a waiver of the life insurance premium with Home Life?

A.  Yes.

Q.  And did you personally have contact with the Home Life Insurance Company in order to carry that out?

A.  Yes.

Q.  In fact, did you have a communication from Home Life Financial Assurance Company that the requested waiver of premium had been granted in regard to Dr. Abatie?

A.  Yes.

In addition to the deposition testimony of Ms. Peter, Mrs. Abatie submitted several documents from the Clinic's records indicating that Dr. Abatie's waiver of premium claim had been granted by Home Life. One of the submitted records describing the status of insurance coverage for several former Clinic employees contained the following type-written entry for Dr. Abatie's life insurance: "Premiums waiver requested in January, 1994. Should be receiving confirmation any day. Premiums are $170.34." Directly following that entry is a handwritten note stating, "Waiver was granted 2/94." Ms. Peter testified in her deposition that she wrote that note on the record around the time the waiver of premium was granted by Home Life.

Another document contained in the Clinic's records was a handwritten memorandum from Ms. Peter which stated, in part, "We still have Dr. Abatie, his wife and his son on our health plan, we have him and his wife on our dental plan and

the life insurance premium is waived." Ms. Peter testified in her deposition that she wrote that memo in August 1994.

After reviewing the newly supplemented administrative record, Alta sent Mrs. Abatie a letter, dated June 6, 2002, denying for the second time coverage on Mrs. Abatie's life insurance claim. In its second denial, Alta again concluded that the waiver of premium claim was never received by Home Life. But Alta's letter failed to discuss Ms. Peter's deposition testimony, as quoted above, which established that Home Life had granted the waiver of premium claim for Dr. Abatie. Instead, Alta referred only to the Clinic records with Ms. Peter's handwritten notes indicating that a waiver of premium claim had been granted. Alta ignored Ms. Peter's deposition testimony.

In brushing aside the weight of Ms. Peter's handwritten notes, Alta commented in its denial letter that the notes did not "specifically state to whom the claim was allegedly submitted, what specific information was provided, who evaluated and approved the claim, and the specific grounds on which the claim was approved." As further reason for discounting the weight of the newly discovered Clinic records, Alta cited the lack of any record of a waiver of premium claim in the files of Alta's predecessor, Home Life.[3]

In the same letter, Alta provided, for the first time, an additional reason for denying Mrs. Abatie's claim. Alta claimed that there was insufficient proof in the administrative record that Dr. Abatie remained totally disabled between the onset of his disability and his death.[4] Alta cited a report from one of

---

[3]There is nothing in the record, however, indicating that Home Life or its successors notified Dr. Abatie that his life insurance coverage would be cancelled for non-payment of premiums.

[4]The policy at issue provided that the insurer would not pay life insurance proceeds in the case of total disability unless it received (1) proof of death, and (2) proof that the insured remained totally disabled until the time of death.

its examining physicians, Dr. Peter Karakusis, M.D., who reviewed Dr. Abatie's medical records during Alta's initial evaluation of Mrs. Abatie's claim. Dr. Karakusis concluded that, because Dr. Abatie "enjoyed both prolonged partial remission of his lymphoma and quiescence of secondary hematological complications," there was insufficient proof of an inability "to perform sedentary work." Alta also cited the August 11, 1998 report from Dr. Mark Abate, claiming that "Dr. [Joseph] Abatie's treating physician concluded that his *medical condition* was 'better than it has been at any time over the last 9 years.'" Contrary to Alta's assertion, Dr. Abate's report actually stated that Dr. Abatie's "*current hemoglobin level* [not his medical condition] is better than it has been at any time over the past 9 years."

### III.    *De Novo Review of Alta's Decision to Deny Benefits is Warranted*

Where a plan administrator flagrantly violates ERISA's procedural protections, and thereby causes the claimant substantive harm, *de novo* review is warranted. *See Gatti*, 415 F.3d at 985; *see also Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003) ("When decisions are not in compliance with regulatory and plan procedures, deference may not be warranted."); *Friedrich v. Intel Corp.*, 181 F.3d 1105, 1110 (9th Cir. 1999) (concluding that *de novo* review was warranted where "procedural irregularities in the initial claims process and an unfair appeals process" tainted plan administrator's benefits decision). I believe that *de novo* review is warranted in this case. Alta failed to comply with ERISA's notice and full and fair review requirements, as required by 29 U.S.C. § 1133 and its implementing regulations.

The first reason that I believe *de novo* review is warranted is that Alta totally ignored Ms. Peter's deposition testimony in its June 2002 letter explaining its final decision to deny coverage. As shown above, Ms. Peter's deposition testimony

was part of the administrative record and clearly supported Mrs. Abatie's assertion that a waiver of premium claim was submitted to and granted by Alta's predecessor, Home Life. Ms. Peter testified that she personally received oral confirmation from Home Life that a waiver of premium had been granted for Dr. Abatie. While ignoring Ms. Peter's deposition testimony, Alta stated that the Clinic's notes regarding the waiver of premium claim for Dr. Abatie were inconclusive. Alta also referred to the absence of any documentary evidence of the waiver of premium in Home Life's files. Rather than weigh the absence of documentary evidence against Ms. Peter's deposition testimony that a waiver of premium was requested and granted, Alta *ignored* Ms. Peter's deposition testimony altogether.

The majority minimizes Alta's failure to consider Ms. Peter's deposition testimony by concluding that "Alta was not required to delve into a he-said, she-said debate" about whether the waiver of premium was granted by Home Life. Maj. Op. at 11834. Instead, the majority holds that "[i]n assessing whether the waiver of premium application and accompanying proof of disability was ever filed, we hold that a plan administrator is entitled to rely exclusively on the written documentation in the administrative record . . . ." Maj. Op. at 11834. That holding finds no support in the statute, its implementing regulations, or caselaw.

ERISA and its implementing regulations require a plan administrator to conduct "a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133(2); *see also* 29 C.F.R. § 2560.503-1(g) (1999); 29 C.F.R. § 2560.503-1. Thus, while a plan administrator is free to weigh conflicting evidence in the administrative record in favor of the plan, *see, e.g.*, *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence," *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Indeed, we have stated that

"where the administrator 'arbitrarily refuse[s] to credit a claimant's reliable evidence,' the administrator's decision fails the 'fair review' requirement of the statute." *Jordan*, 370 F.3d at 879 (quoting *Black & Decker Disability Plan*, 538 U.S. at 834); *see also Grossmuller v. Int'l Union, UAW*, 715 F.2d 853, 857 (3rd Cir. 1983) ("To afford a plan participant whose claim has been denied a reasonable opportunity for full and fair review, the plan's fiduciary must consider *any and all* pertinent information reasonably available to him.") (emphasis added). Current ERISA regulations similarly make clear that the obligation to conduct a "full and fair review" requires a plan administrator to "[p]rovide for a review that takes into account *all comments, documents, records, and other information submitted by the claimant relating to the claim*, without regard to whether such information was submitted or considered in the initial benefit determination." 29 C.F.R. § 2560.503-1(h)(2)(iv) (emphasis added).

As these authorities illustrate, plan administrators may not cherry-pick evidence when reviewing a denial of a claim for benefits. Thus, I think the majority errs by allowing Alta to disregard Ms. Peter's deposition testimony. Here that error is pronounced because Alta has an inherent conflict of interest as both the funding source and the administrator of the benefits plan at issue in this case. *See Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech., Inc.*, 125 F.3d 794, 797 (9th Cir. 1997) ("Given Standard's dual role as both the funding source and the administrator of the Plan, we are faced with an inherent conflict of interest situation . . . ."); *see also Brown v. Blue Cross and Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1561 (11th Cir. 1990) ("Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.").

There is a second reason that I believe *de novo* review of Alta's decision to deny coverage is warranted. Once it decided to deny Mrs. Abatie's claim for coverage, Alta was

obligated under ERISA to provide her with "adequate notice in writing . . . setting forth the *specific reasons* for such denial." 29 U.S.C. § 1133(1) (emphasis added); *see also* 29 C.F.R. § 2560.503-1(f)(1) (1999); 29 C.F.R. § 2560.503-1(g)(1). When Mrs. Abatie made her claim for benefits, Alta was also required to provide her "[s]pecific reference to the pertinent plan provisions on which the denial is based," and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(f)(2) & (3) (1999); *see also Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997) ("If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial . . . .").

In its first denial of Mrs. Abatie's claim in March 2001, Alta relied solely on the absence of evidence in Home Life's files that a timely waiver of premium was granted by Home Life. It was not until Mrs. Abatie came forward with evidence establishing that a waiver of premium *had* been granted by Home Life that Alta provided an additional reason for denying coverage — insufficient proof in the administrative record that Dr. Abatie remained totally disabled between the onset of his disability and his death. By failing to reveal this reason until its final decision to deny coverage in June 2002, Alta basically "sandbagged" Mrs. Abatie by preventing her from challenging its conclusion in the course of Alta's administrative review. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998) (determining ERISA claimants are entitled to "timely and specific" explanations of any denial of benefits and are not to be "sandbagged" by later justifications of the decisions); *see also Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) (concluding that the claimant was denied an opportunity to "meaningfully participate in the appeals process" where he was not provided information "that

served as the basis for the Plan's denial of benefits until after the Plan's decision").

The majority is mistaken insofar as it defends Alta's delay on the basis that there was an incomplete administrative record in March 2001 when Alta initially denied Mrs. Abatie life insurance benefits. *See* Maj. Op. at 11831 ("To be sure, a plan administrator could not be expected to articulate all reasons for denial until the administrative record was complete."). In February 2001, Alta had requested its own examining doctor to review Dr. Abatie's medical records to determine if Dr. Abatie remained totally disabled until the time of his death. Alta therefore could have revealed this additional reason during its initial denial of Mrs. Abatie's claim for benefits in March 2001.

The majority asserts that Mrs. Abatie was not prejudiced by Alta's failure to articulate its additional reason for denying benefits. It states that "[s]ince the initiation of her appeal, Abatie has known that even if she were successful in persuading the appellate body that the initial benefit determination that her husband was no longer covered under the Plan was incorrect, she would still need to demonstrate that her husband remained totally disabled until his death." Maj. Op. at 11831. This reasoning, however, overlooks the basic purpose of ERISA's notice requirements.

The purpose of ERISA's notice requirements is to provide the claimant "with information necessary for him or her to know what he or she must do to obtain the benefit," and to "enable the [claimant] effectively to protest" if a plan persists in its denial of benefits. *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 287 (2d Cir. 2000); *see also DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999) ("The purpose of [the 'full and fair review'] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.") (alterations in original); *Grossmuller*, 715

F.2d at 858 n. 5 ("[T]he persistent core requirements" of full and fair review include "knowing what evidence the decision-maker relied upon, [and] having an opportunity to address the accuracy and reliability of that evidence").

Mrs. Abatie had no reason to think that Alta would deny her claim on the basis that her husband did not remain totally disabled until his death, because Alta failed to articulate this reason in its initial denial of benefits. Accordingly, Mrs. Abatie was entitled to assume that if she could demonstrate that Home Life granted the waiver of premium, she would be eligible for life insurance benefits. She therefore reasonably focused her administrative appeal on establishing that a waiver of premium was granted by Alta's predecessor, Home Life. Furthermore, without notice of this additional justification for denying her claim, Mrs. Abatie did not have an opportunity to challenge the evidence on which Alta relied to reach its final conclusion. Under the majority's reasoning, Mrs. Abatie would have to divine all the possible reasons for the denial of her benefits, and then prepare to rebut them. That is obviously not the "meaningful dialogue between ERISA plan administrators and their beneficiaries" that the statute, regulations, and our caselaw require. *Booton*, 110 F.3d at 1463.

For the reasons stated above, I think that Alta's decision to deny benefits to Mrs. Abatie is undeserving of the deference granted it by the majority. ERISA was established in order to "protect . . . the interests of participants in employee benefit plans and their beneficiaries," 29 U.S.C. § 1001(b) (congressional findings and declaration of ERISA policy), and its notice and full and fair review requirements reflect that basic purpose, *see* 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(g), (h). These requirements are fundamental procedural protections designed for the benefit of plan beneficiaries. Where, as here, those requirements are not met by a plan administrator with an inherent conflict of interest, we should not insulate its decision from adequate judicial review.

Accordingly, I would remand this case to the district court so that it could conduct a *de novo* review of Alta's decision to deny life insurance benefits to Mrs. Karla Abatie.